FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 06, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIELLE M.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, the Commissioner of Social Security, <br><br> Defendant. | No.   4:20-CV-5029-EFS <br><br> **ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION** |

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Danielle M. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly weighing the medical opinions, including all of the medical opinions that limited Plaintiff to occasional manipulation, 2) discounting Plaintiff's symptom reports, and 3) improperly assessing Plaintiff's residual functional capacity and therefore relying on an

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 11 & 12.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 11, and denies the Commissioner's Motion for Summary Judgment, ECF No. 12.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied. [8]

---

[3] 20 C.F.R. § 404.1520(a).

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.*

[7] *Id.* § 404.1520(a)(4)(ii).

[8] *Id.* § 404.1520(c).

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[9] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[10] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[11] If the claimant is able to perform prior work, benefits are denied.[12] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[13] If so, benefits are denied. If not, benefits are granted.[14]

---

[9] 20 C.F.R. § 404.1520(a)(4)(iii).

[10] *Id.* § 404.1520(d).

[11] *Id.* § 404.1520(a)(4)(iv).

[12] *Id.*

[13] *Id.* § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[14] 20 C.F.R. § 404.1520(g).

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[15] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[16]

## II.    Factual and Procedural Summary

Plaintiff filed a Title II application, alleging a disability onset date of November 1, 2015.[17] Her claim was denied initially and upon reconsideration.[18] An administrative hearing was held before Administrative Law Judge Mark Kim.[19]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Plaintiff met the insured status requirements through December 31, 2020;

- Step one: Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 1, 2015;

- Step two: Plaintiff had the following medically determinable severe impairments: panic disorder, anxiety disorder, post-traumatic stress disorder (PTSD), obesity, restless leg syndrome, carpal tunnel

---

[15] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[16] *Id.*

[17] AR 188-89.

[18] AR 120-22 & 124-28.

[19] AR 43-87.

syndrome, and degenerative disc disease of the lumbar and cervical spine;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work with the following limitations:

  > [Plaintiff] can never climb ladders/ropes/scaffolds, and never crawl. She can occasionally climb ramps/stairs, stoop and crouch. She can occasionally reach overhead with the bilateral upper extremities, and frequently handle, finger and feel bilaterally. She should avoid concentrated exposure to extreme cold temperature, excessive vibrations, and unprotected heights. [She] is limited to simple, routine and repetitive tasks with only occasional changes and no fast-paced production requirements, such as conveyor belt-type work. She is limited to only occasional, superficial contact with the general public. She is limited to only occasional interaction with coworkers and no tandem tasks.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as retail marker, photocopy machine operator, and router.[20]

---

[20] AR 17-41.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

When assessing the medical-opinion evidence, the ALJ gave:

- substantial weight to the examining opinion of Dr. William Drenguis, M.D., except as to his occasional handling and fingering limitation, which the ALJ rejected in favor of a frequent handling and fingering limitation;

- substantial weight to the examining opinion of Dr. Jay Toews, Ed.D., except for his opinion that the record did not substantiate PTSD as a severe medically determinable impairment, to which the ALJ gave little weight;

- partial weight to Dr. Nora Marks, Ph.D.'s examining opinion; and

- little weight to the treating opinions of Dillon Burton, PA-C and Robert Perkes, D.C., to the reviewing opinions of Dr. Guillermo Rubio, M.D., Dr. Howard Platter, M.D., John Wolfe, Ph.D., and Diane Fligstein, Ph.D., and to the treating opinion of Kristine Stoew, LICSW.[21]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those

---

[21] AR 30-35.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

symptoms were not entirely consistent with the medical evidence and other evidence in the record.[22]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[23] Plaintiff timely appealed to this Court.

### III.   Standard of Review

A district court's review of the Commissioner's final decision is limited.[24] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[25] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[26] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[27] The Court considers the entire record as a whole.[28]

---

[22] AR 27-30.

[23] AR 1-6.

[24] 42 U.S.C. § 405(g).

[25] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[26] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[27] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[28] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Further, the Court may not reverse an ALJ decision due to a harmless error.[29] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[30] The party appealing the ALJ's decision generally bears the burden of establishing harm.[31]

### IV.    Analysis

**A.    Medical Opinions: Plaintiff established consequential error.**

Plaintiff challenges the ALJ's assignment of little weight to the opinions of Dr. Drenguis, Dr. Perkes, PA-C Burton, Dr. Rubio, Dr. Platter, and Dr. Marks.

1.    <u>Standard</u>

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician who examines but did not treat the claimant, and 3) a reviewing physician who neither treated nor examined the claimant.[32] Generally, more weight is given to the

---

the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[29] *Molina*, 674 F.3d at 1111.

[30] *Id.* at 1115 (quotation and citation omitted).

[31] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[32] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[33]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[34] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[35] may be rejected for specific and germane reasons supported by substantial evidence.[36] The

---

[33] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[34] *Lester*, 81 F.3d at 830.

[35] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[36] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[37]

### 2.    Dr. Drenguis (occasional-manipulation limitation)

On August 16, 2016, Dr. Drenguis conducted a physical evaluation of Plaintiff and reviewed three clinic notes.[38] Dr. Drenguis diagnosed Plaintiff with cervical pain, lumbar pain, right hip pain, bilateral carpal tunnel syndrome (right greater than left), and restless leg syndrome. He opined that Plaintiff could stand/walk for four hours with normal breaks; sit for four hours with normal breaks; lift and carry up to twenty pounds occasionally and ten pounds frequently; occasionally climb, stoop, kneel, crouch, and crawl; frequently reach; and occasionally handle, finger, and feel.

The ALJ gave substantial weight to Dr. Drenguis' opinion that Plaintiff could work at the light exertional level but discounted his opinion that Plaintiff could only occasionally handle and finger bilaterally, instead finding that Plaintiff could frequently handle and finger bilaterally.[39] The ALJ discounted Dr. Drenguis' handle and finger (manipulation) opinion on the grounds that it was inconsistent with Dr. Drenguis' findings, the overall medical evidence of record, and Plaintiff's activities. As discussed below, the Court finds the ALJ's offered reasons for

---

[37] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[38] AR 364-70.

[39] AR 31.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

discounting Dr. Drenguis' occasional-manipulation opinion were not cogent reasons supported by substantial evidence on this record.

First, the ALJ found that Dr. Drenguis' occasional-manipulation opinion was inconsistent with his observation that Plaintiff had full 5/5 grip strength bilaterally and demonstrated good finger dexterity during the examination, by making a full fist, touching her thumb to the tip of each finger, picking up a coin, manipulating a button, tying a bow, and turning a doorknob.[40] While an ALJ may discount a medical opinion if it is internally inconsistent with normal observations,[41] the ALJ may "not succumb to the temptation to play doctor and make their own independent medical findings."[42] Here, in addition to the above-described observations, Dr. Drenguis observed Plaintiff to have decreased sensation to pinprick and light touch in the median nerve distribution of both hands, positive Tinel's test on the right, and a positive bilateral Phalen's test. In addition to his observations and testing, Dr. Drenguis reviewed three medical records. The

---

[40] AR 31 (citing AR 366).

[41] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical opinion is evaluated as to the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (same).

[42] *Rohan v. Chater*, 98 F.3d 866, 970 (7th Cir. 1996).

reviewed medical records include a January 2016 record documenting that Plaintiff, notwithstanding equal bilateral grip strength, had a positive bilateral Tinel's test and therefore was diagnosed with carpal tunnel syndrome and treated with wrist splints, prednisone, and recommended exercises and stretching.[43] Another reviewed record references that Plaintiff was pending surgery for her carpal tunnel.[44] Ultimately, Dr. Drenguis "found bilateral carpal tunnel syndrome, right greater than left. There is sensory change and positive Tinel's test bilaterally. Prognosis is fair" and limited Plaintiff to occasional manipulation.[45]

In comparison, the ALJ disagreed with Dr. Drenguis' interpretation of the test results, observations, and records, instead finding that Dr. Drenguis' occasional-manipulation opinion was inconsistent with his findings. But the ALJ cited no medical opinion or authority to support his lay surmise about the significance of Plaintiff's full grip strength and ability to engage in the cited single-occasion manipulation skills, particularly when Dr. Drenguis was aware of the full grip strength and single-occasion manipulation skills, but instead relied on his

---

[43] AR 351-52.

[44] AR 323. The third record pertained to Plaintiff's treatment for restless legs syndrome and PTSD. AR 377-80 & 364 (stating "[c]linic note dated 06/16/2016 discusses restless leg syndrome and carpal tunnel syndrome").

[45] AR 368.

testing and prior test results. On this record, the ALJ failed to support his
inconsistent-with-medical-findings reason with substantial evidence.

The ALJ also discounted Dr. Drenguis' occasional-manipulation opinion on
the grounds that it was inconsistent with the overall medical evidence of record.[46]
Whether a medical opinion is consistent with the longitudinal record is a factor for
the ALJ to consider.[47] Here, in this portion of the ALJ's decision, the ALJ did not
cite any evidence supporting his statement that Dr. Drenguis' occasional-
manipulation opinion was inconsistent with the overall medical evidence of
record.[48] However, in an earlier portion of his decision, the ALJ stated that
Plaintiff's "neuromuscular findings have otherwise indicated no focal
neurologic/motor/sensory deficits," and the ALJ also commented on Plaintiff's
minimal, conservative treatment.[49] As mentioned above, Plaintiff had a positive
bilateral Tinel's test both in January 2016 and August 2016, and on this latter date
Plaintiff also had decreased sensation to pinprick and light touch in the median
nerve distribution of both hands and a positive Phalen's test.[50] Likewise, in April

---

[46] AR 31.

[47] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the
consistency of the medical opinion with the record as a whole).

[48] AR 31.

[49] AR 23, 27, & 32.

[50] AR 351-52 & 367.

2015, Plaintiff sought treatment for pain in her wrists, was observed with tenderness in her right and left wrists, was diagnosed with carpal tunnel syndrome, and was referred to an orthopedic.[51] The ALJ fails to adequately explain why the observed symptoms and treatment related to the diagnosed carpal tunnel syndrome are inconsistent with Dr. Drenguis' occasional-manipulation opinion, particularly as Dr. Drenguis reviewed the January 2016 record and was aware of the level of treatment directed by the provider. Moreover, surgery had been recommended for her carpal tunnel syndrome, but Plaintiff lacked the insurance and financial resources to pay for the recommended surgery.

Other records cited by the ALJ were September 2017, May 2018, and August 2018 treatment records related to visits for Plaintiff's restless leg syndrome, anxiety, and hip, neck, and back pain.[52] These medical records were not related to Plaintiff's carpal tunnel syndrome and post-dated the recommendation that Plaintiff receive surgery to alleviate her carpal tunnel syndrome—an option she could not afford. Accordingly, on this record, the cited records in other portions of the ALJ's decision do not provide substantial evidence to support the ALJ's bare-bones finding that Dr. Drenguis' occasional-manipulation limitation was inconsistent with the longitudinal record.

---

[51] AR 315-16.

[52] AR 441-43 & 448-53.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Moreover, each of the physicians or the PA-C offering a medical opinion as to Plaintiff's manipulation abilities limited Plaintiff to occasional handling and fingering.[53] Dr. Guillermo Rubio reviewed the record in September 2016 and limited Plaintiff to occasional bilateral handling and fingering.[54] Likewise, Dr. Howard Platter reviewed the record in November 2016 and limited Plaintiff to occasional bilateral handling and fingering.[55] And in September 2018, Plaintiff's treating provider, Dillon Burton, PA-C, limited Plaintiff to occasional use of both upper extremities.[56] "[W]hile an [ALJ] is free to . . . choose between properly submitted medical opinions, he is not free to set his own expertise against that of" the unanimous medical opinions without specific and cogent reasons supported by substantial evidence.[57] Here, the ALJ improperly relied on his interpretation of the

---

[53] POMS DI 24503.025(E)(1) ("Consistency means the extent a medical opinion is consistent with the evidence from other medical and nonmedical sources. . . . The more consistent a medical opinion or prior administrative medical finding is with the evidence from other medical and nonmedical sources in the claim, the more persuasive the medical opinion or prior administrative medical finding.").

[54] AR 94-101.

[55] AR 103-17.

[56] AR 489-91.

[57] *McBrayer v. Sec'y of Health & Human Servs.,* 712 F.2d 795, 799 (2d Cir. 1983); *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998); *Lester,* 81 F.3d at 830.

medical records without cogently explaining how substantial evidence supports his frequent-manipulation limitation, rather than the occasional-manipulation limitation opined by the three physicians and one PA-C offering that opinion after reviewing the same testing and/or treating records.[58]

Finally, the ALJ discounted Dr. Drenguis' occasional-manipulation limitation because it was inconsistent with Plaintiff's activities. An ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity, yet "many home activities are not easily transferable to what may be the more grueling environment of the workplace."[59] Here, the ALJ highlighted that Plaintiff "can manage her daily personal care/hygiene, and prepare meals including cutting meat and using utensils, as well as doing household chores with breaks, taking

---

[58] *Tackett v. Apfel,* 180 F.3d 1094, 1102-03 (9th Cir. 1999) (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion); *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves."); *Gonzalez Perez v. Sec'y of Health & Human Servs.,* 812 F.2d 747, 749 (1st Cir. 1987) ("The ALJ may not substitute his own layman's opinion for the findings and opinion of a physician."); Soc. Sec. Disability Law & Proc. in Fed. Court, Substitution of own opinion for that of physician, § 6:24 (2020).

[59] *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

stairs, driving, and grocery shopping using a push cart" and care for her dogs.[60] In another portion of the ALJ's decision, the ALJ mentioned that Plaintiff's hobbies included crocheting, cake decorating, and gardening.[61] While these hobbies and activities include the use of Plaintiff's hands, the ALJ did not identify how these hobbies and activities, which can be done on an intermittent and sporadic basis, are inconsistent with Plaintiff's need to be limited to occasional handling and fingering at a full-time work position. Moreover, Dr. Drenguis was aware that Plaintiff crocheted, took care of her daily personal needs, cut meat, fed herself, drove, grocery shopped, washed dishes, vacuumed, swept, and did laundry. Nonetheless, Dr. Drenguis—like the two reviewing physicians and the PA-C who offered a manipulation opinion—limited Plaintiff to occasional manipulation. Accordingly, on this record, the ALJ's finding that Dr. Drenguis' occasional-manipulation opinion was inconsistent with Plaintiff's activities is not supported by substantial evidence.

The ALJ's decision to discount the occasional-manipulation opinion of Dr. Drenguis—and each of the reviewing physicians and the PA-C providing an opinion in that regard—was harmful. The vocational expert testified that if Plaintiff was limited to occasional handling and fingering there were *no* jobs available in the

---

[60] AR 28 & 31.

[61] AR 25.

national economy, given Plaintiff's other exertional and non-exertional limitations.[62]

Notwithstanding the vocational expert's testimony, the Commissioner argues that there is serious doubt as to whether Plaintiff is in fact limited to occasional handling and fingering because she did not complain of carpal tunnel syndrome in either her May 2016 disability application or June 2016 function report and Plaintiff's carpal tunnel syndrome can be controlled effectively with treatment.[63] The Commissioner is correct that Plaintiff did not list carpal tunnel as a disabling impairment on her application or identify that the use of her hands was effected on her function report. Regardless of what information is contained on the application or function report, the ALJ must consider a claimant's functional limitations arising from all severe impairments.[64] In making this assessment, the ALJ is to consider *all* of the evidence in the case record.[65] As mentioned above, the ALJ considered treatment records about Plaintiff's carpal tunnel as well as the four

---

[62] AR 83.

[63] ECF No. 12 at 12 (citing AR 211, 234, 64, 345, 372, 361, 368, 396, 405, & 412).

[64] "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

[65] 20 C.F.R. 404.1520(a)(3) & 404.1512(a)(1) ("We will consider only impairment(s) you say you have *or about which we receive evidence*." (emphasis added).

medical opinions that discussed Plaintiff's carpal tunnel and resulting manipulation limitations. In addition, at the administrative hearing, Plaintiff testified that she experienced hand numbness and pain and that when engaging in activities that affected her carpal tunnel she did so in "spurts."[66] The ALJ found Plaintiff's carpal tunnel to be a severe impairment and agreed that Plaintiff was functionally limited by her carpal tunnel. But instead of accepting the unanimous occasional-manipulation opinion offered by each of the medical physicians and PA-C, the ALJ limited Plaintiff to frequent handling and fingering. On this record, that Plaintiff did not list a hand-related impairment on her disability application or function report does not create serious doubt that Plaintiff was limited to occasional manipulation.

Second, the Commissioner argues that there is serious doubt as to whether Plaintiff is limited to occasional manipulation because Plaintiff's carpal tunnel can be controlled effectively with treatment and therefore it cannot be considered a disabling impairment. The Commissioner cites no evidence that Plaintiff's carpal tunnel is controlled effectively with the conservative treatment employed thus far, namely splints, medication, and stretching exercises. In fact, the medical evidence reflects otherwise, i.e., that Plaintiff continued to have positive Tinel's and/or Phalen's tests with decreased sensation. And Plaintiff testified, consistent with similar notations in the medical record, that she did not have insurance coverage

---

[66] AR 64-65 & 68.

or other financial means to pay for the recommended carpal tunnel surgery.[67] The ALJ did not make any findings contrary to this testimony, and the Commissioner did not present evidence contrary to this testimony. Moreover, notwithstanding the conservative treatment, the three physicians and one PA-C who offered an opinion as to Plaintiff's functional limitations resulting from her carpal tunnel all opined that she is limited to occasional manipulation.

In summary, the ALJ erred, and his error was consequential.

## B.   Other Challenges

Because the ALJ harmfully erred by discounting the occasional-manipulation limitation opined by Dr. Drenguis, Dr. Rubio, Dr. Platter, and PA-C Burton, and because there were no step-four or step-five jobs that Plaintiff could perform given all of her exertional and non-exertional limitations, the Court need not address Plaintiff's other challenges

## C.   Remand: A remand for award of benefits is appropriate.

Plaintiff submits a remand for payment of benefits is warranted. Because the Court finds that the ALJ improperly weighed the medical evidence, the Court has discretion as to whether to remand for further proceedings or for benefits.[68] Where no useful purpose would be served by further administrative proceedings, or

---

[67] AR 51-52, 60, 62, 69, 327-28, 350, 354, 365, 405, 441, & 449.

[68] *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

where the record has been fully developed, it is appropriate to direct an immediate award of benefits.[69]

There is no serious doubt that Plaintiff is disabled when the agreed-upon occasional-manipulation limitation is credited.[70] Plaintiff's carpal tunnel symptoms were observed in April 2015, confirmed in January 2016 with a positive bilateral Tinel's test, and again observed in August 2016.[71] The record is fully developed, and further administrative proceedings will serve no useful purpose given the vocational expert's testimony that there were no available jobs if Plaintiff was limited to occasional manipulation.[72] Remand for payment of immediate benefits from Plaintiff's alleged onset date of November 1, 2015, is warranted.

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

---

[69] *Harmon*, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").

[70] *Garrison*, 759 F.3d at 1020.

[71] AR 314-16, 350, & 364-69.

[72] *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

3.      The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

REVERSING and REMANDING the matter to the Commissioner of

Social Security for immediate calculation and award of benefits.

4.      The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

provide copies to all counsel.

**DATED** this 6th  day of October 2020.


_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge